THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARA SIEGEL, Contemnor-Appellant.

First District (3rd Division) No. 80-1265

Opinion filed December 9, 1981.

Michael Deutsch and Shelly A. Bannister, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Mara Siegel appeals from an order of the circuit court of Cook County which held her in direct contempt of court and fined her $1000.

Contemnor was the attorney for Marie Rodriguez, a member of the F.A.L.N. (Armed Forces for National Liberation of Puerto Rico), who was charged with armed robbery, armed violence and possession of a stolen vehicle. When she appeared in court on April 28, 1980, Rodriguez

asserted that she was a prisoner of war, that the trial court had no jurisdiction over her, and that she waived her right to counsel. Because of Rodriguez' disruptive conduct at the court appearance, the trial court ordered that she be gagged.

The following day the court ordered that Rodriguez be returned to the courtroom so that he could advise her of her right to counsel pursuant to Supreme Court Rule 401. (Ill. Rev. Stat. 1979, ch. 110A, par. 401.) When the case was called, the contemnor approached the bench and the following colloquy occurred:

"Ms. Siegel: Judge, I'd like to object for the record, Mara Siegel, and I am one of the legal advisors of the defendant. I'd like to protest, she is a prisoner of war. This court does not have jurisdiction to bar people from the courtroom, nobody was even allowed * * *

The Court: Have you filed your appearance?

Ms. Siegel: I do not have an appearance on file. I am going to object to the binding and gagging of Miss Rodriguez. The Court does not have jurisdiction to try her. She is a prisoner of war. It is her demand as the demand of all of her friends is that they be transferred to an international tribunal where their case can be heard and they be adjudged as prisoners of war. This is outrageous display of the United States cruel and inhumane treatment. * * *

The Defendant: Imperialist.

Ms. Siegel: For people and especially their political belief. I will object to this, to the defendant presently being bound and gagged and handcuffed and held by three marshalls.

The Court: Let the record show I stated to you when you came into my chambers, you will not be allowed to stay in this courtroom unless you file an appearance the way an appearance should be filed * * *

The Defendant: I waive the right of counsel. I am here against my will.

The Court: Let me say this, I asked you when you came out and because of your outrageous behavior * * *

The Defendant: I am a prisoner of war.

The Court: Behavior, you are in contempt of this Court. You are fined $1000.00 and you will remain in the custody of the sheriff until that money is paid. * * * I wish the State to draw up a contempt citation regarding this attorney * * *."

In his written order finding contemnor in direct contempt of court, the trial court stated that prior to the case of *People v. Rodriguez* being called, contemnor appeared in his chambers and introduced herself as an attorney at law. The court informed her that unless she filed a formal

appearance as attorney for Rodriguez, she would not be allowed to address the court when the case was called.

 Contemnor contends that her conduct did not constitute direct contempt of court. Contempt of court has been defined as conduct calculated to embarrass, hinder or obstruct a court in the administration of justice, to derogate from its authority or dignity or bring the administration of law into disrepute. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 248 N.E.2d 104; *People v. Edwards* (1979), 69 Ill. App. 3d 626, 387 N.E.2d 969.) As a general rule, direct contempt occurs in the presence of the court so that all of the elements of the offense are within the court's personal knowledge. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.) Because contumacious conduct is committed in the presence of the court, the contemnor may be adjudged and punished in a summary manner. (*City of Chicago v. Chicago Fire Fighters Union* (1981), 99 Ill. App. 3d 583, 425 N.E.2d 1071.) The power to punish for direct contempt is an extraordinary power. (*People v. Miller* (1972), 51 Ill. 2d 76, 281 N.E.2d 292.) Therefore, the court must exercise its power prudently and judiciously because normal constitutional safeguards are not applicable. *People v. Kuelper* (1977), 46 Ill. App. 3d 420, 361 N.E.2d 29.

In the instant case the basis for the finding of contempt was contemnor's violation of the court's order given in chambers that she could not address the court unless she filed a formal appearance. There is no copy of this order in the record. Contemnor asserts that she did not file an appearance pursuant to the explicit instructions of her client. Rodriguez apparently felt that any participation in the legal proceedings would jeopardize her claim under international law.[1] Siegel argues that her brief statement concerning the court's treatment of her client did not disrupt, obstruct, embarrass or denigrate the court in any manner. She denies that the court gave her any order in chambers concerning the filing of her appearance. She points out that although the written order of contempt states that she was instructed not to address the court unless she filed an appearance, the report of proceedings for April 29, 1980, reveals that the court stated that he had told her that she could not stay in the courtroom without filing an appearance.

Assuming, as we must, that the court did instruct her to remain silent in the courtroom unless she filed an appearance, contemnor's disobedience of this order was certainly wrong. However, under the circumstances of this case, we cannot say that it was contemptuous.

In the instant case Siegel was instructed by her client not to file an appearance since her client had no intention of participating in the trial.

---

[1] Rodriguez and 10 additional members of the F.A.L.N. have submitted to the United Nations a petition in which they seek recognition of their status as prisoners of war.

Contemnor observed her client being brought into the courtroom by three deputy sheriffs bound and gagged, a situation which in itself is an affront to the dignity and decorum of judicial proceedings. (*Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057.) At this point contemnor approached the bench and identified herself, objected to the treatment of her client, and explained her client's position concerning the court's jurisdiction. Contemnor's statement did not interrupt the proceeding; she spoke as soon as the case was called, and spoke briefly without disrespect or any personal attack upon the court. The trial court immediately and without warning held her in contempt and placed her in the custody of the sheriff.

■■ We cannot say that contemnor's conduct was calculated to embarrass the court, to lessen its dignity or to bring the administration of law into disrepute. We believe that her action was in good faith and in the best interest of her client, and therefore, it should not serve as a basis for a charge of contempt. See *People v. Kuelper*.

For this reason, the judgment of the circuit court of Cook County is reversed. We therefore need not consider the contemnor's second argument that the $1000 fine was excessive.

Reversed.

McNAMARA and WHITE, JJ., concur.